**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

Richard Harrington, individually and on behalf
of all others similarly situated,

  Plaintiff,

  v.

STOCKX, INC., and STOCKX, LLC,

  Defendants.

**Case No.**  2:19-cv-13704_____

**CLASS ACTION COMPLAINT
BASED ON:**

**1. Negligence
2. Negligence Per Se
3. Negligent Misrepresentation
4. N.Y. Gen. Bus. Law § 349**

**DEMAND FOR JURY TRIAL**

## I.      INTRODUCTION

1.      Businesses that collect and store sensitive information about their customers have a duty to safeguard that information and ensure it remains private. This responsibility is essential where a business keeps and stores its customers' highly Personal Information, such as their name, email and physical address, usernames, and passwords.

2.      Plaintiff Richard Harrington ("Harrington") brings this class action individually and on behalf of individuals that suffered, and continue to suffer, damages as a result of StockX's failure to properly secure and safeguard the Personal Information describe above ("Personal Information").

3.      On August 8, 2019, StockX acknowledged that their computer system had been breached and the Personal Information of its customers had been compromised (the "Data Breach").

4.      The information exposed included, at minimum, the customers' names along with at least one of the following data elements: physical address; username and/or email address, and passwords.

5.      Further, compounding the harm, StockX knew or should have known about the Data Breach for over four months before it publicly disclosed the incident. Indeed, according to TechCrunch, "[a]n unnamed data breached seller contacted TechCrunch claiming more than 6.8 million records were stolen from the site in May by a hacker. The seller declined to say how they obtained the data." TechCrunch also confirmed that "[i]n a dark web listing, the seller put the data for sale for $300." Zack Whittaker, TechCrunch, StockX was hacked, exposing millions of customers' data (Aug. 3, 2019), https://techcrunch.com/2019/08/03/stockx-hacked-

millions-records/ (last accessed Dec. 13, 2019). StockX did not notify the impacted individuals

or publicly disclose the Data Breach until August 8, 2019.

## II.      PARTIES

6.      Plaintiff Richard Harrington resides in and is a citizen of New York.

7.      Plaintiff has been a customer of StockX since approximately 2018.

8.      StockX, Inc. is a Delaware corporation with its principal place of business in

Detroit, Michigan.

9.      Defendant StockX, LLC, is a Michigan limited liability company with its

principal place of business in Detroit, Michigan. StockX, LLC is a citizen of Michigan.

10.      Defendants are herein referred to collectively as "StockX."

## III.     JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §

1332(d), the Class Action Fairness Act, which affords federal courts with original jurisdiction

over cases where any member of the plaintiff class is a citizen of a state different from any

defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and

costs. Plaintiff, being a resident of the State of New York, is diverse from Defendants, both of

which are headquartered in Michigan and neither are organized under the laws of New York.

Plaintiff alleges that, in the aggregate, the claims of all Class members exceed $5,000,000,

exclusive of interest and costs.

12.      This Court is the proper venue for this case pursuant to 28 U.S.C. § 1391(b)

because, as Defendants are, and at all relevant times were, a resident of Michigan residing in

the Eastern District and a substantial part of the events and omissions giving rise to Plaintiff's

claims occurred in Eastern District of Michigan.

## IV.    FACTUAL BACKGROUND

13.    According to StockX, it is "the world's first stock market for things – a live 'bid/ask' marketplace. Buyers place bids, sellers place asks and when a bid and ask meet, the transaction happens automatically." StockX, How It Works, https://stockx.com/how-it-works (last accessed Dec. 13, 2019).

14.    StockX collects, stores, and maintains its customers' Personal Information.

15.    In or around May 2019, hackers gained access to StockX's information systems and stole the Personal Information of 6,840,339 users.

16.    The information obtained by the hackers included the affected individuals' unique email addresses, names, physical addresses, purchases, and passwords stored as salted MD5 hashes.

17.    "MD5" stands for Message Digest algorithm 5 and was invented almost 30 years ago as a type of cryptographic hashing function. The idea behind cryptographic hashing is to take an arbitrary block of data and return a fixed-size "hash" value. It can be any data, of any size but the hash value will always be fixed. In the past, some companies have used MD5 cryptographic hashing was used to store passwords. For example, a user would input a password into a database, like StockX's website. The website would run the MD5 algorithm and convert that password to a hash value, storing only the hash value, and not the password.



18.     The problem is that MD5 was designed to demonstrate data integrity at high computational speed rather than to provide a password storage mechanism. Even if MD5 were "safe" for password storage when designed, MD5 goes back 30 years and processors exist today that are eight thousand times faster to crack the algorithm. For example, a brute force cracker like "ighashgpu" for MD5 can make 5.6 billion guesses at a user's password, based on an MD5 digest, per second. Using this tool, it would take only 3 hours to guess "Hun!er2" using a naive brute force approach. In 2019, it is widely understood that salting, the process of adding a random value to passwords, consistent with a mindset that long passwords are better than short passwords, is an inadequate defense to these brute force attacks.

19.     Despite the theft occurring in May 2019 and claiming it was first "alerted" to suspicious activity on July 26, 2019, StockX waited until August 8, 2019 to publicly announce the breach and notify affected individuals. StockX did not explain why it took more than three months to discover the breach and almost two weeks to disclose it.

20.     The breadth of data compromised in the Data Breach (including unique username/email + password combinations) makes the information particularly valuable to thieves and leaves StockX's customers especially vulnerable to identity theft, tax fraud, credit and bank fraud, and more.

21.     As indicated by Troy Hunt, a Microsoft Regional Director and MVP:

So there's a lot of stuff getting hacked and a lot of credentials floating around the place, but then what? I mean what do evil-minded people do with all those email addresses and passwords? Among other things, they attempt to break into accounts on totally unrelated websites. Here's a great example: someone grabs the 164 million record LinkedIn data dump that turned up [in 2016] and cracks the hashes. … In no time at all you've got tens of millions of email address and plain text password pairs. And this is where the real problems begin.

As fallible humans, we reuse passwords. We've all done it at one time or another and whilst I hope that by virtue of you being here reading security stuff you've got yourself a good password manager, we've all got skeletons in our

closets (more on mine soon). Most people are just out there YOLO'ing away with the same password or three across all their things. We know that because again, we've all done it and hackers know that because that's their job! As such, they're going to try and break into as many other accounts as they can using the credentials from a data breach.

Troy Hunt, Password reuse, credential stuffing and another billion records in Have I been pwned (May 5, 2017), https://www.troyhunt.com/password-reuse-credential-stuffing-and-another-1-billion-records-in-have-i-been-pwned/ (last accessed Dec. 13, 2019).

22.     This type of security threat is called "Credential Stuffing." Hunt explains that a number of reasons make Credential Stuffing a serious threat: "(1) [i]t's enormously effective due to the password reuse problem; (2) [i]t's hard for organisations to defend against because a successful "attack" is someone logging on with legitimate credentials; (3) [i]t's very easily automatable; you simply need software which will reproduce the logon process against a target website; and (4) [t]here are readily available tools and credential lists that enable anyone to try their hand at credential stuffing." *Id.*

23.     StockX was aware of its duty to safeguard the Personal Information that it collected, and its customers relied on StockX to take every precaution to safeguard their Personal Information.

24.     Plaintiff is a customer of StockX.

25.     StockX collected Personal Information from Plaintiff, including Plaintiff's unique email address, name, physical address, purchase history, and password stored as salted MD5 hashes.

26.     StockX failed to safeguard Plaintiff's Personal Information and, as a result, Plaintiff's Personal Information was exposed as part of the Data Breach.

27.     According to StockX's belated notice to Plaintiff of the Data Breach, at minimum, Plaintiff's "name, email address, address, username, hashed passwords, and

purchase history" were disclosed in the Data Breach. StockX, Update on Data Security Issue (Aug. 8, 2019), https://stockx.com/news/update-on-data-security-issue/ (last accessed Dec. 13, 2019).

28.     As a result of the Data Breach, Plaintiff has expended time and suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the future consequences of the Data Breach including investigating the information compromised and how best to ensure he is protected from potential identity theft and fraud, which efforts are continuous and ongoing.

29.     Plaintiff has also suffered injury directly and proximately caused by the Data Breach including: (a) theft of their valuable Personal Information; (b) the imminent and certain impeding injury flowing from fraud and identity theft posed by their Personal Information being placed in the hands of hackers; (c) damages to and diminution in value of their Personal Information that was entrusted to StockX for the sole purpose of obtaining products and services with the understanding the StockX would safeguard the Personal Information against disclosure; (d) loss of the benefit of the bargain with StockX to provide adequate and reasonable data security – i.e., the difference in value between what Plaintiff should have received from StockX when StockX represented Plaintiff's Personal Information would be protected by reasonable data security and StockX's defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect Plaintiff's Personal Information; and (e) continued risk to Plaintiff's Personal Information, which remains in the possession of StockX and which is subject to further breaches so long as StockX fails to undertake appropriate an adequate measures to protect the Personal Information that was entrusted to StockX.

30.     StockX itself acknowledged the harm caused by its Data Breach because it offered Plaintiff twelve months of complimentary "fraud detection and identity theft protection" as a result of the Data Breach. *Id*. However, such services are woefully inadequate to protect Plaintiff and the Class members from a virtual lifetime of identity theft risk and does nothing to reimburse Plaintiff and the Class members from the injuries they have already suffered. Indeed, such services may do nothing to protect from common uses of Personal Information by hackers such as potential fraud, tax fraud, or fraudulent business or payday loans, for instance.

## V.     CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action individually and as a class action on behalf of the following nationwide and New York Subclasses (collectively, the "Class"):

### Nationwide Class

All persons in the United States (including its Territories and the District of Columbia) whose Personal Information was compromised as a result of the Data Breach.

### New York Subclass

All persons in New York whose Personal Information was compromised as a result of the Data Breach.

32.     Excluded from the Class are StockX and its officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

33.     The members of the Class are so numerous and geographically dispersed that joinder would be impracticable. Information released by StockX suggests that the number of

Class members exceeds 6 million. Class members are readily identifiable from information and records in StockX's possession, custody, or control

34.     There is a well-defined community of interest in the common questions of law and fact affecting the Class members. These common legal and factual questions include, but are not limited to:

a.     whether StockX owed a duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and members of the Class when obtaining, storing, using, and managing Personal Information, including taking action to safeguard such data;

b.     whether StockX failed to safeguard Plaintiff's and the Class members' Personal Information;

c.     whether StockX implemented and maintained data security measures that it knew or should have known were unreasonable and inadequate to protect Personal Information;

d.     whether StockX negligently allowed Personal Information to be accessed, used, or disclosed by third parties;

e.     whether StockX failed to timely and adequately notify Plaintiff and members of the Class that its data systems were breached;

f.     whether Plaintiff and members of the Class were injured;

g.     whether StockX's actions and inactions failed to provide reasonable security proximately caused the injuries suffered by Plaintiff and members of the Class;

h.     whether Plaintiff and members of the Class are entitled to damages and, if so, the measure of such damages; and

i.      whether Plaintiff and members of the Class are entitled to injunctive, equitable, declaratory and/or other relief, and if so, the nature of such relief.

35.     Plaintiff's claims are typical of the claims of the absent class members and have a common origin and basis. Plaintiff and absent Class members are all injured by the Data Breach. Plaintiff's claims arise from the same practices and course of conduct giving rise to the claims of the absent Class members and are based on the same legal theories, namely the StockX Data Breach. If prosecuted individually, the claims of each Class member would necessarily rely upon the same material facts and legal theories and seek the same relief. Plaintiff's claims arise from the same practices and course of conduct that give rise to the other Class members' claims and are based on the same legal theories.

36.     Plaintiff will fully and adequately assert and protect the interests of the absent Class members and have retained Class counsel who are experienced and qualified in prosecuting class action cases similar to this one. Neither Plaintiff nor Plaintiff's attorneys have any interests contrary to or conflicting with the interests of absent Class members.

37.     The questions of law and fact common to all Class members predominate over any questions affecting only individual class members.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the absent Class members' claims is economically infeasible and procedurally impracticable. Class members share the same factual and legal issues and litigating the claims together will prevent varying, inconsistent, or contradictory judgments, and will prevent delay and expense to all parties and the court system through litigating multiple trials on the same legal and factual issues. Class treatment will also permit Class members to litigate their claims where it would otherwise be too expensive or

inefficient to do so. Plaintiff knows of no difficulties in managing this action that would preclude its maintenance as a class action.

39.     Additionally, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for StockX. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class members and impair their interests. StockX, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

## VI.     CAUSES OF ACTION

### COUNT I – NEGLIGENCE

### On behalf of the Nationwide Class

40.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.     StockX requires Plaintiff and Class members to submit Personal Information in order to obtain goods and services from StockX.

42.     StockX knew or should have known the risks inherent in collecting and storing the Personal Information of plaintiff and the Class members.

43.     StockX owed a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and members of the Class when obtaining, storing, using, and managing Personal Information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class members of any breach in a timely manner so that appropriate action can be taken to minimize or avoid losses.

44.     This duty extends to protecting others against the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where an actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts §302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard Personal Information.

45.     Plaintiff and the Class members were the intended beneficiaries of StockX's duty to safeguard Personal Information, creating a special relationship between them and StockX. Indeed, Plaintiff and the Class members entrusted StockX with their Personal Information in order to obtain health care related goods and/or services from StockX, and they relied on StockX to maintain reasonable and adequate security measures in order to protect that Personal Information from disclosure. Only StockX was in a position to ensure that its systems were sufficient to protect the Personal Information that Plaintiff and the Class members entrusted to it.

46.     It was foreseeable that injury to Plaintiff and Class members would result from StockX's active mishandling of Personal Information including, but not limited to, StockX's failure to use reasonable security measures to protect such Personal Information and to provide timely notice of the data breach.

47.     StockX assumed the duty to act with reasonable care in managing its data, and to use reasonable security measures to protect such data, as a result of its conduct and privacy policies in which the Company repeatedly states that it would protect Plaintiff's and the Class members' Personal Information. Through these statements, StockX specifically assumed the duty to comply with the data security industry standards.

48.     StockX knew or should have known of the significant risk that its computer systems would be breached, in particular in light of the numerous recent data breach incidents around the country.

49.     StockX breached its common law duties and industry standards of care—and was negligent—by actively mishandling the Personal Information of Plaintiff and Class members and by failing to use reasonable and adequate security measures to protect that Personal Information from the hackers who perpetrated the Data Breach, by failing to identify the Data Breach in a timely manner, and by failing to provide timely notice of the Data Breach once discovered.

50.     StockX breached its duties by: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized disclosure, misuse, alteration, destruction or other compromise of such information; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; and/or (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein.

51.     As a direct and proximate result of StockX's negligent acts of misfeasance and nonfeasance, Plaintiff and Class members have suffered and continue to suffer injury, including loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable Personal Information; the imminent and certain impeding injury flowing from fraud and identity theft posed by their Personal

Information being placed in the hands of hackers; damages to and diminution in value of their Personal Information that was entrusted to StockX for the sole purpose of obtaining its products and services with the understanding that StockX would safeguard the Personal Information against disclosure; and continued risk to Plaintiff's and the Class members' Personal Information, which remains in the possession of StockX and which is subject to further breaches so long as StockX fails to undertake appropriate an adequate measures to protect the Personal Information that was entrusted to StockX.

## COUNT II – NEGLIGENCE PER SE

### On behalf of the Nationwide Class

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair practice of failing to act reasonably in the management of the data, and to use reasonable security measures to protect such data by companies such as StockX. FTC guidelines, publications, and consent orders described above also form the basis of StockX's duty.

54.     StockX violated Section 5 of the FTC Act (and similar state statutes) by mishandling Plaintiff's and the Class members' Personal Information, failing to use reasonable measures to protect the Personal Information, and by not complying with applicable industry standards.

55.     StockX's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

56.     Plaintiff and the Class are within the scope of persons that Section 5 of the FTC Act (and similar state statutes) was intended to protect.

57.     Furthermore, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the Class here.

58.     As a direct and proximate result of StockX's negligence per se, Plaintiff and the Class have suffered and continue to suffer injury and damages, including loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable Personal Information; the imminent and certain impeding injury flowing from fraud and identity theft posed by their Personal Information being placed in the hands of hackers; damages to and diminution in value of their Personal Information that was entrusted to StockX for the sole purpose of obtaining its products and services with the understanding the StockX would safeguard the Personal Information against disclosure; and continued risk to Plaintiff's and the Class members' Personal Information, which remains in the possession of StockX and which is subject to further breaches so long as StockX fails to undertake appropriate an adequate measures to protect the Personal Information that was entrusted to StockX.

## COUNT III – NEGLIGENT MISREPRESENTATION

### On behalf of the Nationwide Class

59.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.     StockX misrepresented material information to Plaintiff and the Class by misrepresenting that it would protect the confidentiality of their Personal Information, including by implementing and maintaining reasonable data security measures. To this end, at all relevant times, StockX's privacy policy has provided: "All information you provide to us is stored on our secure servers. … Once we have received your information, we will use strict procedures and security features to try to prevent unauthorised access." StockX, StockX Privacy Policy – Your Privacy Rights (updated Oct. 9, 2018) (Exhibit A).

61.     These misrepresentations were material and made intentionally and knowingly with the intent that Plaintiff and Class members rely on them.

62.     StockX knew or should have known that by collecting and storing Personal Information, Plaintiff and Class members would reasonably rely on StockX's representations that its servers were secure and that StockX would "use strict procedures and security features."

63.     StockX' representations were material to Plaintiff and Class members, given the extreme sensitivity, value, and importance of the Personal Information maintained by StockX.

64.     Had StockX disclosed to Plaintiff and Class members that its systems were not secure and thus vulnerable to attack, Plaintiff and the Class members would not have entrusted their Personal Information to StockX.

65.     As a direct and proximate result of StockX's material misrepresentations and omissions, Plaintiff and Class members have suffered injury-in-fact, monetary and non-monetary damages, and an increased certainly impending risk of fraudulent banking activity, and/or identity theft, as described herein.

66.     Plaintiff and the Class members' injuries include the loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of

the Data Breach; theft of their valuable Personal Information; the imminent and certain impeding injury flowing from fraud and identity theft posed by their Personal Information being placed in the hands of hackers; damages to and diminution in value of their Personal Information that was entrusted to StockX for the sole purpose of obtaining its products and services with the understanding the StockX would safeguard the Personal Information against disclosure; and continued risk to Plaintiff's and the Class members' Personal Information, which remains in the possession of StockX and which is subject to further breaches so long as StockX fails to undertake appropriate an adequate measures to protect the Personal Information that was entrusted to StockX.

### COUNT IV – VIOLATION OF N.Y. GEN. BUS. LAW § 349 *et seq.*.

### On behalf of the New York Subclass

67.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.    StockX has violated New York's Gen. Bus. Law § 349 (for the purposes of this section, "GBL § 349") by engaging in "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" with respect to the goods and services it provided to the New York Subclass, including but not limited to the following:

a.    by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard Personal Information from unauthorized disclosures, releases, data breaches, and theft;

b.    by omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the New York Subclass's Personal Information;

c.      by failing to disclose to the New York Subclass at the time they provided their Personal Information to StockX that StockX's data security systems failed to meet legal and industry standards for the protection of the New York Subclass's Personal Information; and

d.      by soliciting and collecting Plaintiff and New York Subclass members' Personal Information with knowledge that the information would not be adequately protected and by storing that Personal Information in an unsecure electronic environment.

69.     StockX thus violated GBL § 349 by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with the intent that Plaintiff and New York Subclass members rely upon such concealment, suppression or omission, in connection with StockX's provision of its services to them. Plaintiff did in fact rely on such deceptive acts or practices described herein.

70.     StockX's practices were also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected in laws like the FTC Act.

71.     The harm these practices caused to Plaintiff and the New York Subclass members outweighed their utility, if any.

72.     As a direct and proximate result of StockX's acts of unfair and unlawful practices, Plaintiff was injured and lost money or property including lost time responding to the Data Breach, loss of value of the compromised Personal Information, and the failure to receive the benefit of the bargain – i.e., the difference in value between what Plaintiff should have received from StockX when StockX represented Plaintiff's Personal Information would be protected by reasonable data security and StockX's defective and deficient performance of that

obligation by failing to provide reasonable and adequate data security and failing to protect Plaintiff's and New York Subclass members' Personal Information.

73.     StockX knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff and New York Subclass members' Personal Information and that the risk of breach or theft was highly likely.

74.     StockX's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and the members of the New York Subclass.

75.     Plaintiffs and New York Subclass members seek all monetary and non-monetary relief allowed by law, including treble damages; injunctive relief; reasonable attorneys' fees and costs; and any other just and appropriate relief under GBL § 349.

## VII.    PRAYER FOR RELIEF

76.     Wherefore, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests judgment against StockX as follows:

        a.      For an order certifying this action as a class action, defining the Class and Subclass as requested herein, appointing the undersigned as Class counsel, and finding Plaintiff to be a proper representative of the Class and Subclass.

        b.      For a permanent injunction and any other equitable relief as necessary to protect the interest of the Class, including:

                i.      An order declaring StockX's conduct alleged herein unlawful and prohibiting StockX from engaging in the wrongful and unlawful acts.

                ii.     Requiring StockX to develop a security protocol to include standards to:

1.      protect all data collected or received through the course of its business in accordance with the FTC Act and other federal, state, and local laws, and best practices under industry standards;

2.      design, maintain, and test their computer systems to ensure that Personal Information in their possession is adequately secured and protected;

3.      engage third-party security auditors and internal security personnel to conduct testing, including simulated attacks, penetration testing, and audits on StockX's systems on a periodic basis and ordering it to promptly correct any problems or issues detected by those auditors;

4.      audit, test, and train their security personnel to run automated security monitoring, aggregation, filtering and reporting on log information in a unified manner;

5.      encrypt all Personal Information;

6.      purge, delete, and destroy in a reasonably secure and timely manner any Personal Information no longer necessary for their provision of goods and services;

7.      routinely and continually conduct internal training and education to inform personnel how to identify and contain a breach and what to do in response;

8.      deploy appropriate and up-to-date SPAM filters, web filters, and antivirus solutions;

9.      employ standards for password expiration and complexity; and

10.     educate its employees and conduct training sessions with mock phishing exercises.

iii.     Requiring StockX to disclose any future data breaches in a timely and accurate manner.

c.     An award of compensatory damages, restitution, statutory damages, punitive damages, and/or attorneys' fees and costs recoverable under the claims pleaded herein, as well as any such other relief as is just and proper.

## VIII.   DEMAND FOR JURY TRIAL

77.     Plaintiff demands a trial by jury on all issues so triable

Date: December 17, 2019                     Respectfully submitted,


*/s/ Gary F. Lynch*
Gary F. Lynch
Kevin W. Tucker
**CARLSON LYNCH LLP**
1133 Penn Avenue
Floor 5
Pittsburgh, PA 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246

Nick Suciu III, Esq.
**BARBAT, MANSOUR & SUCIU PLLC**
*nicksuciu@bmslawyers.com*
Barbat Mansour & Suciu PLLC
Bloomfield Hills, Michigan 48302
Tel: (313) 303-3472


*Attorney for Plaintiff and the Proposed Classes*